

# NUMBER 13-20-00280-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ELIJAH TATES,**                                                                     **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                              **Appellee.**

---

**On appeal from the 85th District Court
of Brazos County, Texas.**

---

# OPINION

**Before Chief Justice Contreras and Justices Hinojosa[1]  and Silva
Opinion by Justice Silva**

A jury convicted appellant Elijah Tates of evading arrest, a state jail felony

enhanced to a second-degree felony due to prior convictions.[2] *See* TEX. PENAL CODE

---

[1] The Honorable Leticia Hinojosa, former Justice of this Court, was a member of the panel at the time this appeal was originally submitted but did not participate in this decision because her term of office expired on December 31, 2022. *See* TEX. R. APP. P. 41.1.

[2] This appeal was transferred to this Court from the Tenth Court of Appeals in Waco by order of

ANN. §§ 12.425(a); 38.04(b)(1)(A). The trial court assessed punishment at five years' confinement following a punishment hearing held via videoconference. *See id.* § 12.34. On appeal, Tates argues the trial court erred (1) in failing to provide his requested jury instruction during guilt/innocence and (2) in conducting the punishment phase of trial by videoconference in violation of his federal and state constitutional and statutory rights. *See* U.S. CONST. amends. V, VI, XIV; TEX. CONST. art. I, §§ 10, 19; TEX. CODE CRIM. PROC. ANN. arts. 33.03, 38.23. Guided by a recent Texas Court of Criminal Appeals opinion, *Lira v. State*, PD-0212-21, 2023 WL 151372 (Tex. Crim. App. Jan. 11, 2023), we sustain Tates's second issue and reverse and remand.

## I.     CHARGE ERROR

In his first point of error, Tates challenges the legality of the stop leading to his arrest and alleges the trial court erred in denying his request for an exclusionary rule instruction under Article 38.23 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.").

### A.     Standard of Review and Applicable Law

Trial courts are obligated to instruct the jury on the law applicable to the case. *Williams v. State*, 662 S.W.3d 452, 460 (Tex. Crim. App. 2021); *see* TEX. CODE CRIM.

---

the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001. Because this is a transfer case, we apply the precedent of the Waco Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

2

PROC. ANN. art. 36.14. In evaluating alleged jury charge error, we first determine whether the trial court erred in refusing the requested instruction. *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020). If we find error, we then engage in a harm analysis. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). Where, as here, the defendant preserved the alleged error, should we find error then we must reverse if we find "some harm." *Jordan*, 593 S.W.3d at 346 ("'Some harm' means actual harm and not merely a theoretical complaint."); *Almanza*, 686 S.W.2d at 171.

Article 38.23 is a statutory exclusionary rule which exists to prevent illegally obtained evidence from being used at trial. *See Holder v. State*, 639 S.W.3d 704, 707 (Tex. Crim. App. 2022); *Day v. State*, 614 S.W.3d 121, 128 (Tex. Crim. App. 2020) ("The text of Article 38.23 addresses the admissibility of evidence at trial when the law has been violated."). When evidence presented at trial directly pertains to a contested fact issue and raises a concern of whether it was legally obtained, the jury shall be instructed that "if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of [Article 38.23], then and in such event, the jury shall disregard any such evidence so obtained." TEX. CODE CRIM. PROC. ANN. art. 38.23(a). The "contested fact issue must be material to the lawfulness of the challenged conduct in obtaining the evidence," and the burden is on the defendant to make the showing of materiality. *Chambers v. State*, 663 S.W.3d 1, 4 (Tex. Crim. App. 2022) (first citing TEX. CODE CRIM. PROC. ANN. art. 38.23; and then citing *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex.

3

Crim. App. 2007)). "Where the issue raised by the evidence at trial does *not* involve controverted historical facts, but only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court," and no Article 38.23 jury charge instruction is required. *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012).

## B.    Analysis

Tates was indicted on December 15, 2016, and the case was tried to a jury in January 2020. At trial, Bryan Police Department Officer Liam Stewart testified that he initiated a traffic stop after twice witnessing Tates fail to signal before turning.[3] *See* TEX. TRANSP. CODE ANN. § 545.104 (signaling turns). Officer Stewart stated Tates continued to drive before ultimately stopping his vehicle and fleeing on foot. Tates denied committing any traffic violation prior to stopping his vehicle but conceded to fleeing on foot because he had marijuana in his possession.[4]

During a charge conference, Tates requested the submission of an Article 38.23 jury instruction:

> I want to make it clear for the record I'm requesting the 38.23; that my request in regard to 38.23 that the jury should be allowed to consider as part of that—the language in the 38.23 would be essentially that the officer's initial reason for the stopping and detention was illegal because there's a— the dispute should be as to whether or not the—my client made a legal turn—a legal versus an illegal turn. So, the exact language—but that would be the indication that the officer's testimony is that he made an illegal turn and our contention that he did not and so the 38.23 language that the jury

---

[3] A recording from Officer Stewart's vehicle dash camera, which corroborated Officer Stewart's testimony, was admitted into evidence.

[4] A jail phone call recording was also admitted into evidence, wherein Tates was identified and stated that he ran from police because he had "shit" in his possession. During cross examination, Tates clarified that by "shit," he meant marijuana.

4

should be asked and be allowed to consider is did the officer attempt to stop him when he indicated that my client made an illegal turn, and that should be a dispute for that. So, the exact wording is that.

The trial court denied the requested Article 38.23 jury instruction, and the jury returned a guilty verdict.

Even assuming the trial court erred, we observe that the lawfulness of Tates's detention was already litigated as part of the State's case at trial and subsumed in the jury's consideration of whether the State had proven all the elements of the charged offense. *See Day*, 614 S.W.3d at 129 (observing that "when the validity of an arrest or detention is an element of the charged offense," the issue can "simply be litigated as part of the State's case at trial"); *cf. Woods v. State*, 153 S.W.3d 413, 415–16 (Tex. Crim. App. 2005) (concluding motion to suppress evidence of an alleged unlawful detention was improper where appellant's motion concerned the lawfulness of the detention)*. To obtain a conviction on the offense of evading arrest, the State was required to prove beyond a reasonable doubt that Tates intentionally fled from a person he knew was a peace officer who was "attempting lawfully to arrest or detain him," and the jury was instructed accordingly. *See* TEX. PENAL CODE ANN. § 38.04(a); *Day*, 614 S.W.3d at 130. The jury was entitled to find from the evidence before it that Officer Stewart was attempting to lawfully detain Tates, and in returning a guilty verdict, the jury necessarily did so. *See Day*, 614 S.W.3d at 130; *Porter v. State*, 255 S.W.3d 234, 243 (Tex. App.—Waco 2008, pet. ref'd) ("The trial court instructed that the jury could find Porter guilty only if the jury found that Porter 'did flee from a peace officer who was attempting lawfully to arrest or detain' Porter. Thus, in finding Porter guilty of evading arrest or detention, the jury

5

necessarily found that the arrest or detention of Porter was lawful.") (cleaned up).

Accordingly, even assuming the trial court erred in its exclusion of Tates's requested instruction, reversal is not warranted as Tates did not suffer actual harm from the alleged error. *See Jordan*, 593 S.W.3d at 346; *Almanza*, 686 S.W.2d at 171; *see also* TEX. R. APP. P. 44.2(b). We overrule Tates's first issue.

## II.    PUNISHMENT

By his second issue, Tates argues that the trial court erred in proceeding remotely during the punishment phase of trial, in violation of his constitutional and statutory rights to be personally present.

The Sixth Amendment to the United States Constitution and Article I, § 10 of the Constitution of Texas affords a defendant threatened with loss of liberty, as part of the right of confrontation, the right to be present at all phases of proceedings against him. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, §§ 10, 19; *Lira*, 2023 WL 151372, at *7 ("[T]he right to be present in the courtroom at every stage of trial is guaranteed by the Confrontation Clause of the Sixth Amendment."). The Texas Code of Criminal Procedure further ensures that "[i]n all prosecutions for felonies, the defendant must be personally present at the trial," TEX. CODE CRIM. PROC. ANN. art. 33.03, and "sentence shall be pronounced in the defendant's presence." *Id.* art. 42.03; *Sandoval v. State*, No. AP-77,081, 2022 WL 17484313, at *4 (Tex. Crim. App. Dec. 7, 2022); *Papakostas v. State*, 145 S.W.3d 723, 726 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (applying Article 33.03 to punishment and sentencing proceedings).

Tates was physically present during the entire guilt-innocence phase of the jury

6

trial. Following a guilty jury verdict, Tates elected for the trial court to assess punishment, and the punishment hearing was reset. The COVID-19 pandemic unfolded in the interim, and several months later, the trial court held a punishment hearing via videoconference. Tates, who was in custody at the time, made his appearance remotely from the county jail, while his counsel appeared in-person from the courtroom. Prior to the initiation of punishment proceedings, Tates's counsel informed the trial court that he had been unable to communicate with Tates and was having technical difficulties setting up a virtual "private room." The trial court took a brief recess, and when the parties returned on the record, there was no mention of whether the issue had been resolved. Tates's counsel nonetheless entered pleas of not true to the State's enhancement allegations "on behalf of [his] client." The State thereafter called several law enforcement witnesses to establish Tates's identity for purposes of connecting him to prior judgments and to testify to prior unadjudicated offenses. Tates's counsel cross-examined each of the State's witnesses, and there appeared to be no pause in proceedings for Tates to confer with his counsel. Tates subsequently testified, advocating for a probationary sentence. At the conclusion of punishment proceedings, the trial court found the allegations in the State's enhancement paragraphs to be true and sentenced Tates to five years' confinement. At no point did Tates object to his lack of personal presence at punishment.

## A.    Preservation

At the outset we address the State's argument that Tates failed to preserve this issue for appellate review because he never raised the alleged error before the trial court. *See* TEX. R. APP. P. 33.1 (requiring that an objection be made to preserve error for

appellate review). Tates acknowledges that no objection was made but avers none was required because error-preservation rules do not apply to this type of complaint.

The Texas criminal adjudicatory system contains "error-preservation 'rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request.'" *Proenza v. State*, 541 S.W.3d 786, 792 (Tex. Crim. App. 2017) (quoting *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993)). These three classifications are referred to as category-one, -two, and -three *Marin* rights, respectively. *Id.* If an alleged error falls into one of the first two *Marin* categories—that is, if it involves a violation of an absolute systemic requirement or a violation of a right that is waivable only—it may be raised for the first time on appeal. *See id.* All other complaints, i.e., category-three *Marin* rights, are forfeited unless preserved. *Id.*; *see* TEX. R. APP. P. 33.1; *Burg v. State*, 592 S.W.3d 444, 449 (Tex. Crim. App. 2020) ("Rule 33.1 applies to category-three 'forfeitable' *Marin* rights and requirements."). The Texas Court of Criminal Appeals has not expressly determined whether a defendant's right to be present at punishment proceedings or sentencing is a category-one, -two, or -three right under *Marin*. However, we find guidance in our illegal sentence jurisprudence and in the court's inveterate treatment of a defendant's constitutional and statutory right to be present in criminal proceedings.

"[T]he right to be sentenced legally [is] an absolute or waivable-only right." *Burg*, 592 S.W.3d at 449. "[A] sentence 'consists of[:] the facts of the punishment itself, including the date of commencement of the sentence, its duration, and the concurrent or cumulative

8

nature of the term of confinement and the amount of the fine, if any.'" *Id.* at 450 (quoting *State v. Kersh*, 127 S.W.3d 775, 777 (Tex. Crim. App. 2004)). Certain sentencing complaints "clearly [fall] 'in' the closed curve of things that can make a 'sentence' legal or illegal: a term of years; a fine; the fact of shock or regular probation; and enhancements." *Id.* at 451. But what of a defendant's right to be present at the proceeding wherein all matters comprising of a sentence are discussed and disposed of? As the *Lira* court recognized, a sentence rendered outside of the defendant's presence is not authorized by law. *See Lira*, 2023 WL 151372, at *14 ("[A] sentence rendered outside of the defendant's presence [i]s 'no sentence at all.'" (quoting *Casias v. State*, 503 S.W.2d 262, 264 (Tex. Crim. App. 1973))); *Ex parte Pue*, 552 S.W.3d 226, 228 (Tex. Crim. App. 2018) ("An illegal sentence is one that is not authorized by law."). It would be contrary to reason to conclude that the alleged violation of a defendant's right to be present, which under these facts would implicate the entirety of the punishment proceedings and sentence, does *not* concern a sentence's legality. *See generally Garcia v. State*, 149 S.W.3d 135, 140 (Tex. Crim. App. 2004) (concluding defendant's right to have an interpreter present during trial proceedings was akin to the defendant's right to be present, it was a category-two *Marin* right, and the violation of such right resulted in an illegal sentence).

Therefore, we hold that the right to be present at sentencing implicates the legality of a sentence and is not forfeited by a failure to object at trial. *See Burg*, 592 S.W.3d at 449; *see also Ojeaga-Ibrahim v. State*, No. 14-21-00155-CR, 2022 WL 4103314, at *4–5 (Tex. App.—Houston [14th Dist.] Sept. 8, 2022, no pet.) (mem. op., not designated for publication) (concluding an appellant may raise a challenge to the denial of his right to be

9

present at sentencing, even in the absence of an objection because "[w]hen a trial judge fails to perform a mandatory duty, a defendant may raise that failure even in the absence of an objection"); *see also Tucker v. State*, No. 08-19-00015-CR, 2020 WL 729194, at *2 n.4 (Tex. App.—El Paso Feb. 13, 2020, no pet.) (mem. op., not designated for publication) (observing the same in dicta); *Rodriguez v. State*, No. 04-04-00230-CR, 2005 WL 899963, at *3 (Tex. App.—San Antonio Apr. 20, 2005, pet. ref'd) (mem. op., not designated for publication) (reviewing a defendant's challenge to the imposition of a sentence in his absence where there was no indication the argument was preserved).

## B.     Standard of Review and Applicable Law

Having concluded an objection was not required to preserve Tates's complained-of error on appeal, we return to the question before this Court: whether the trial court deprived Tates of his constitutional and statutory right to be present during his punishment proceedings. Because we resolve the issue on statutory grounds, we do not reach Tates's constitutional challenges. *See* TEX. R. APP. P. 47.1.

As we proceed with our statutory analysis, "we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation." *Lira*, 2023 WL 151372, at *3. "[W]e presume that every word has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *Id.* "Accordingly, time-honored canons of interpretation, both semantic and contextual, can aid interpretation, provided the canons esteem textual interpretation." *Id.* "Statutory construction is a question of law that we review *de novo*." *Id.*

Two statutory schemes, located in Chapters 33 and 42 of the code of criminal

10

procedure, control punishment proceedings and sentencing pronouncement and frame our analysis below. *See* TEX. CODE CRIM. PROC. ANN. arts. 33.03, 42.03, 42.14(b). As noted *supra*, Articles 33.03 and 42.03 mandate a defendant's presence during punishment proceedings: "the defendant must be personally present at the trial," *id.* art. 33.03, and "sentence shall be pronounced in the defendant's presence." *Id.* art. 42.03. Moreover, references to the defendant's "presence" in Articles 33.03 and 42.03 denote an in-person requirement. *Lira*, 2023 WL 151372, at *9; *see Ette v. State*, 559 S.W.3d 511, 516 (Tex. Crim. App. 2018) ("[T]he imposition of sentence is the crucial moment when all of the parties are physically present at the sentencing hearing . . . ." (quoting *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002))); *see also Ojeaga-Ibrahim*, 2022 WL 4103314, at *4 (citing various cases discussing the "reasons for the presence requirement at sentencing" and noting that sentencing is a crucial moment requiring all the parties to be "physically present at the sentencing hearing").

Recently, on the heels of the pandemic and the resulting acceleration of the legal technological landscape, the Texas Court of Criminal Appeals addressed whether the "present" and "presence" language of several provisions, including Article 33.03, could be satisfied if a defendant appeared remotely. *See Lira*, 2023 WL 151372, at *2–3. The court held that, pursuant to the plain language of the relevant texts, remote presence using electronic videoconference technology is not a permissible substitute where there exists a statutory in-person presence requirement; and in the context of plea proceedings, the defendant must waive "in person or in writing their right to be present."[5] *Id.* at *4–14.

---

[5] Notably missing from Articles 33.03 and 42.03 is any reference to electronic conference technology. *See* TEX. CODE CRIM. PROC. ANN. arts. 33.03, 42.03. However, references to such technology

Significantly, the court also reaffirmed its long-standing precedent, stating that the unwaived absence of a felony defendant may limit a court's authority to preside over punishment proceedings or to pronounce sentence outside of the defendant's presence.[6] *See Lira*, 2023 WL 151372, at *14 (reviewing case law holding that the lack of a defendant's presence at sentencing affected a court's jurisdiction and authority); *see also In re State ex rel. Ogg*, 618 S.W.3d 361, 364–65 (Tex. Crim. App. 2021) (orig. proceeding) (concluding that Article 1.13's requirement that the State consent to a defendant's waiver of a jury trial, is "not merely procedural, but implicates the trial court's authority to preside," and absence of consent invalidated the proceeding itself).

As with the right to be present at a plea proceeding or during the guilt-innocence portion of trial, a felony defendant may waive his statutory right to be present at his punishment proceeding or sentencing, but such waiver must be done in accordance with Articles 33.03 or 42.14(b). *See* TEX. CODE CRIM. PROC. ANN. arts. 1.14, 33.03, 37.06, 42.14; *Lira*, 2023 WL 151372, at *8–10; *Carson v. State*, 559 S.W.3d 489, 492 (Tex. Crim. App. 2018); *Simon v. State*, 554 S.W.3d 257, 265 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (concluding that although the requirements of Article 42.14 are not met,

---

exist elsewhere in the code. *See, e.g.*, *id.* arts. 27.18 ("Plea or Waiver of Rights by Videoconference"); 43.03 ("Payment of fine"). Article 27.18 permits a trial court to preside over "a plea or a waiver of a defendant's right[s]" remotely under prescribed circumstances—including the written consent from both the defendant and the State. *Id.* art. 27.18. Article 43.03 permits a hearing regarding outstanding fine payments to be held "in person or by means of an electronic broadcast system through which an image of the defendant is presented to the court." *Id.* art. 43.03(d), (f).

[6] The court additionally held that the Texas Supreme Court's emergency orders did not act to "suspend procedures designed to protect substantive rights." *Lira v. State*, PD-0212-21, 2023 WL 151372, at *4 (Tex. Crim. App. Jan. 11, 2023); *see generally Hodges v. State*, 116 S.W.3d 289, 293–94 (Tex. App.—Corpus Christi–Edinburg 2003, pet. ref'd) ("[S]entencing is a 'stage of a criminal proceeding where substantial rights may be affected.'" (quoting *Ex parte Vestal*, 468 S.W.2d 372, 373 (Tex. Crim. App. 1971))).

proceedings against a defendant may proceed to judgment in the defendant's absence in accordance with Article 33.03); *Papakostas*, 145 S.W.3d at 726 ("[W]e hold [A]rticle 33.03 authorizes a defendant's punishment to be assessed in absentia regardless of whether the punishment is to be assessed by the trial judge or the jury."); *see also Smith v. State*, No. 13-15-00442-CR, 2016 WL 3911239, at *2 (Tex. App.—Corpus Christi–Edinburg July 14, 2016, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion in finding that appellant had voluntarily absented himself from his punishment hearing under Article 33.03). It is the alleged absence of a voluntary waiver of a felony defendant's statutory right to be present under Article 33.03 which is the crux of Tates's statutory challenge on appeal.[7]

---

[7] Article 42.14(b) permits a "judgment and sentence" in a felony case to be "rendered in the absence of the defendant only if" the following conditions are met:

(1)    the defendant is confined in a penal institution;

(2)    the defendant is not charged with a felony offense . . . listed in Article 42A.054(a); . . .

(3)    the defendant in writing before the appropriate court having jurisdiction in the county in which the penal institution is located:

    (A)    waives the right to be present at the rendering of the judgment and sentence or to have counsel present;

    (B)    affirms that the defendant does not have anything to say as to why the sentence should not be pronounced and that there is no reason to prevent the sentence under Article 42.07;

    (C)    states that the defendant has entered into a written plea agreement with the attorney representing the state in the prosecution of the case; and

    (D)    requests the court to pronounce sentence in the case in accordance with the plea agreement;

(4)    the defendant and the attorney representing the state in the prosecution of the case have entered into a written plea agreement that is made a part of the record in the case; and

(5)    sentence is pronounced in accordance with the plea agreement.

13

Under Article 33.03, a defendant may voluntarily absent himself "after pleading to the indictment or . . . after the jury has been selected when trial is before a jury," permitting for the trial to proceed to its conclusion, including the trial court's imposition of a sentence. *Id.* The word "voluntarily" is not legislatively defined, and consequently, we construe the word in accordance with its common usage and may consult standard or legal dictionaries to determine its meaning. *See State v. Hardin*, No. PD-0799-19, 2022 WL 16635303, at *4 (Tex. Crim. App. Nov. 2, 2022); *Watkins v. State*, 619 S.W.3d 265, 272–73 (Tex. Crim. App. 2021). Both Black's Law Dictionary and Merriam Webster's Dictionary define "voluntary" as an act "[d]one by design or intention." VOLUNTARY, Black's Law Dictionary (11th ed. 2019); *Voluntary*, Merriam-Webster.com, http://merriam-webster.com/dictionary/voluntary (last visited May 8, 2023). Neither Article 33.03 of the Texas Code of Criminal Procedure nor case law require a trial court to make an express finding that a defendant's absence from trial is voluntary. *See Gittens v. State*, 560 S.W.3d 725, 737 (Tex. App.—San Antonio 2018, pet. ref'd); *see also Smith*, 2016 WL 3911239, at *3.

## C.    Analysis

Like the defendant in *Lira*, Tates was not physically present for sentencing proceedings, and thus, his remote presence was tantamount to being absent under the controlling provisions. *See Lira*, 2023 WL 151372, at *1, *8–10; *see also* TEX. CODE CRIM. PROC. ANN. arts. 33.03, 42.03. Moreover, the record contains no articulated decision from Tates or actions by Tates tending to indicate that his absence was voluntary. *See Lira*,

---

TEX. CODE CRIM. PROC. ANN. art. 42.14(b). Article 42A.054 contains an enumerated list of offenses of which evading arrest is not included. *See id.* art. 42A.054(a). Neither party advocates for the applicability of Article 42.14(b); therefore, our analysis concerns only Article 33.03.

2023 WL 151372, at *14 ("The error was not merely the failure to file the appropriate paperwork. Proceeding without securing Appellants' consent abrogated Appellants' substantive statutory right to be present."); *cf. Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984) (finding that trial court could have reasonably inferred that defendant voluntarily absented himself where defendant was informed of when and where to appear and neither court nor defendant's counsel received any communication from defendant explaining his absence); *cf. also Amador v. State*, No. 13-19-00562-CR, 2021 WL 5456661, at *8 (Tex. App.—Corpus Christi–Edinburg Nov. 23, 2021, pet. ref'd) (mem. op., not designated for publication) (concluding defendant had voluntarily absented herself from sentencing proceedings where "[s]he expressly stated to transporting officers that she was refusing to attend the hearing, she physically resisted the officers' efforts to transport her, and she made threatening comments"); *Jones v. State*, No. 10-19-00350-CR, 2021 WL 4198452, at *2 (Tex. App.—Waco Sept. 15, 2021, no pet.) (mem. op., not designated for publication) (concluding defendant had voluntarily absented himself when he inexplicably exited the courtroom while his attorney was conducting voir dire and returned shortly thereafter). Though Tates's undisputed electronic presence throughout the entirety of punishment and sentencing complicates our inquiry, we have found no authority which would allow us to construe Tates's remote appearance, occurring while in the State's custody—without more—as evidence of his intention to be voluntarily absent for his punishment and sentencing. *See Lira*, 2023 WL 151372, at *8 ("Physical presence is personal to the accused and cannot be disregarded or ignored by the courts without affirmative action or assent by the accused."); *Hodges*, 116 S.W.3d at 296

15

(concluding appellant was not voluntarily absent at trial where appellant did not appear in-person because he was in a holding cell, in the State's custody); *see also Cuellar v. State*, No. 13-21-00383-CR, 2023 WL 2607929, at *3 (Tex. App.—Corpus Christi–Edinburg Mar. 23, 2023, no pet. h.) (mem. op., not designated for publication) ("The busy trial courts of our state cannot stop the wheels of an already burdened criminal justice system because a defendant *chooses* to be absent from his own trial." (emphasis added) (quoting *Smith v. State*, 494 S.W.3d 243, 254 (Tex. App.—Texarkana 2015, no pet.))).

"Whether because of concern for the constitutionality of remote [punishment] proceedings without the defendant's consent or because of some other policy determination left squarely to the legislature, the legislature has made its intent plain through text, and we must accord it respect." *Lira*, 2023 WL 151372, at *10. The legislature has chosen to mandate a felony defendant's in-person appearance during punishment proceedings subject to a potential voluntary waiver. *See Lira*, 2023 WL 151372, at *4–14; *see also* TEX. CODE CRIM. PROC. ANN. arts. 33.03, 42.03, 42.14. Because Tates was not present for sentencing in a manner recognized or permitted by the code and the record does not support the existence of a waiver pursuant to either Articles 33.03 or 42.14, *see* TEX. CODE CRIM. PROC. ANN. arts. 33.03, 42.14; *Moore*, 670 S.W.2d at 261, the trial court abrogated Tates's substantive statutory right to be present at his punishment and sentencing, and the facts of this case warrant the same result as in *Lira*. *See Lira*, 2023 WL 151372, at *14; *Hodges*, 116 S.W.3d at 293–94. We sustain appellant's second issue on appeal, and we remand for a new sentencing hearing.

### III.  CONCLUSION

We reverse and remand for proceedings consistent with this opinion.

CLARISSA SILVA
Justice

Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
25th day of May, 2023.